## Case No. 17,199.

### WARREN v. ST. PAUL et al.

[5 Dill. 498; 4 Law & Eq. Rep. 556; 1 N. W. Rep. (O. S.) 100.] [1]

Circuit Court, D. Minnesota. 1877.

MUNICIPAL CORPORATIONS — POWER TO SETTLE DISPUTED CLAIMS—REMEDY OF TAXPAYER.

1. Municipal corporations with power to make contracts, and to sue and be sued in respect thereto. may. in the absence of special legislative restriction. compromise a disputed claim, and the settlement is binding on the municipality and its taxpayers. unless it can be impeached for fraud.

2. The city of St. Paul possesses this power, and it is not restricted by the creation of the board of public works.

3. A taxpayer cannot overhaul or question the settlement, fairly made by a municipal corporation. of a disputed claim arising under a contract not ultra vires.

This action is brought [by George B. Warren] to forever restrain the city of St. Paul from allowing. recognizing. or paying eight thousand four hundred and ninety-five dollars and fifty-one cents ($8,495.51), or any part thereof, claimed by the defendants. McCarthy, Butler, and Eaton. on account of the grading of lower Third street in said city. The city of St. Paul undertook. in May, 1873, to grade this part of one of its public thoroughfares, and to that end its board of public works, having authority in the premises. duly advertised for proposals for doing the work,

[1] [Reported by Hon. John F. Dillon, Circuit Judge. and here reprinted by permission. 4 Law & Eq. Rep. 556. contains only a partial report.]

fixing a time and place for receiving bids. Prior to such advertisement, the city engineer was directed to make an estimate of the amount of earth required to bring the street up to the proposed grade. The ground to be filled was bog or marsh, and the earth deposited thereon would sink, more or less, from its own weight, but the estimate made did not include any sinkage, and was limited to measurements from the surface of the street to the grade line. The approximate quantity required to make the filling complete to the grade line was computed to be fifty-four thousand eight hundred cubic yards. This estimate was posted up in the engineer's office, and contractors seeking information were referred to it by him and his subordinates. The defendants, McCarthy, Butler, and Eaton, under the name of J. C. McCarthy & Co., offered to do the work for the sum of $18,975, and their bid was accepted, and a contract duly entered into between the city and themselves. The contractors, by the 23d of June, 1874, had deposited more than the number of cubic yards of earth specified in the approximate estimate, and fully one-half of this amount had disappeared below the original surface of the street, and, on a measurement made the last of May, 1874, it was found that the amount of earth in sight was less than on the first of the month, although five thousand yards had been put on the street during the month, and between April 6th and June 12th about eighteen thousand yards had disappeared in the same way. The city authorities insisting on a strict performance of the contract, and more than ninety thousand cubic yards of earth being required to bring the street to grade, the contractors, in view of the facts, stopped work June 23d, 1874, and demanded payment for the value of the work done, for which they threatened to sue the city, claiming that they had been deceived by the city authorities as to the quantity of work to be done, and by the representations of the city engineer under the directions of the board of public works. The contractors had been paid upon the contract $9,630.04, and the balance claimed by them to be justly due for work performed was nearly $9,000. After several efforts were made for an adjustment of the claim against the city, a special committee was appointed by the common council and an investigation had, and a report was made, with the concurrence of the city attorney, recommending a settlement. The common council of the city adopted the report of its committee, which allowed the sum of $8,495.51 as a compromise, payable out of the local improvement fund, and was proceeding to make the payment when the complainant, the owner of certain city lots fronting the street to be graded, brought this suit in the district court of Ramsey county, in this state, and a temporary injunction was obtained. The suit was removed to this court under the act of congress of March 3, 1875 [18 Stat. 470]. The city of St. Paul suffers a default.

I. V. D. Heard, for complainant.

Morris Lamprey and George L. Otis, for defendants, McCarthy, Butler, and Eaton.

NELSON, District Judge. The corporation of the city of St. Paul is, under its charter (chapter 1, § 1, 1874), invested with all the general powers possessed by municipal corporations at common law, including the power to contract for the grading of streets, and can sue and be sued upon such contracts. It may, therefore, lawfully take any steps which an individual could, to arrange all differences growing out of such contracts by an amicable settlement and adjustment. It could relieve from performance, refer to arbitration, or compromise by agreement, and the question of expediency in so doing is left entirely to its judgment. Unless collusion between the officers of the corporation and contractors is shown, or fraud exists, nothing less than a legislative restriction can prevent the exercise of this power by the proper authorities. See Dill. Mun. Corp. § 398, and numerous authorities cited. Endowed with liberal and plenary authority, the corporation must necessarily, for the general welfare of its inhabitants, and incident to the powers expressed in the charter, possess an inherent right to adjust all disputed claims, and a decision bona fide made by the proper corporate officers is final and conclusive. I do not understand this proposition to be disputed, but it is said that the creation of a board of public works in the charter, and the law compelling the owners of the property benefited to pay for local improvements, have limited and restricted the right ordinarily conferred upon the common council of a municipal corporation, with reference to compromising and adjusting claims growing out of public improvements. I find nothing in the city charter intrusting this power to any other than the governing body. The common council are specially intrusted with the care, supervision, and control of all public thoroughfares and public improvements within the city limits. Charter 1874, c. 4, § 7. An executive department, entitled "the board of public works," was organized and constituted by chapter 6, but nothing therein limits this general supervision and care conferred upon the council.

The execution of contemplated local improvements ordered by the common council, and assessments for the expenses thereof, are intrusted to this department, but the power to initiate all improvements relating to the grading of streets, etc., emanates from the former, and, by a unanimous vote of the members thereof, can be ordered irrespective of the approval or disapproval of the board of public works. Charter 1874, c. 7, § 5.

In view of these provisions of the charter, and applying thereto the ordinary principles of construction, the common council, acting in behalf of the corporation, are authorized to exercise the power of compromising or submitting to arbitration disputed claims against the

city, to be paid out of such funds as are provided by law to meet any and all liabilities incurred, and additional legislation is unnecessary.

The charter, as amended in 1876, merely defined the manner in which the common council might submit any matter to arbitration, and restricted the exercise of the power already existing to a two-thirds vote. The repeal of this section left it, as before, to a majority.

A taxpayer may, perhaps, by injunction, restrain the corporate authorities from a misappropriation of money raised by taxation; but when the proposed appropriation is to settle a disputed claim arising under a contract not ultra vires and within the scope of their powers, a court will not interfere. It is urged that the common council acted upon a mistaken idea as to the law governing the rights of the corporation in the premises. Admit it, and the case is not altered. The compromise is a matter of discretion and judgment, exercised in a manner deemed for the best interests of the city. If unwisely adopted, it is an error of opinion as to the expediency of an adjustment, and does not originate in any bad motive. The report of a committee of investigation in favor of this settlement, and the concurrence therein of the city attorney, after a full examination of the facts, were first obtained before any compromise was favored by the council.

I lay out of view entirely the position assumed by counsel, that the city was not liable in any event, and the contractors could not enforce, by suit, their claim. This question does not enter into a decision of the case, and to my mind the fact that the city might successfully interpose a defence if suit was commenced by the contractors is immaterial when bad faith is not alleged.

The action of the common council recognized the existence of a contract between the city corporation and the defendants named, and presupposes a liability to pay something.

It is urged that the complainant can have no relief if denied in this suit. The stringency of the local assessment or improvement provisions of the charter affects both resident and nonresident property-holders alike. When enacted, the statute was regarded as beneficial and necessary to an equitable and proper exercise of the general powers of the corporation. If experience has demonstrated it to be harsh and cumbersome, and illy adapted to subserve the interests of the city, an appeal should be made to the legislature to modify it or substitute some other more simple and less expensive mode of making improvements. While such provisions are embodied in the charter, and the corporation is in good faith proceeding to enforce them, the fact, if true, as stated, that no relief can be had by a taxpayer interested, except in the manner pointed out in the law, can afford no justification for judicial interference.

Bill dismissed.